Filed 2/22/21 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
FIRST APPELLATE DISTRICT
DIVISION FIVE


| | |
|---|---|
| HOWARD JARVIS TAXPAYERS ASSOCIATION, et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Defendant and Respondent. | A157983<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT]**<br><br>(San Francisco County Super. Ct. No. CGC-18-568657) |


**BY THE COURT:**


It is ordered that the opinion filed January 27, 2021 be modified as follows:

(1) On page 19, in the paragraph that begins the page, replace the sentence, "But Howard Jarvis does not contend that a single official's sponsorship of or involvement in an initiative gives rise to the inference that a city or county intentionally circumvented Propositions 13 and 218, or demonstrates that the official effectively controlled the initiative." with "But we fail to see how the sponsorship and involvement of the single official here

1

gives rise to the inference that the City intentionally circumvented Propositions 13 and 218 or effectively controlled the initiative."

There is no change in the judgment.

Appellants' petition for rehearing is denied.

Dated: __02/22/2021__ _____SIMONS, J_____, Acting P.J.

Superior Court of San Francisco County, No. CGC-18-568657, Hon. Ethan P. Schulman, Judge.

Jonathan M. Coupal, Timothy A. Bittle, Laura E. Dougherty for Plaintiffs and Appellants.

Eversheds Sutherland, Timothy A. Gustafson, Eric J. Coffill, Alexandra M. Louderback for Council on State Taxation as Amicus Curiae on behalf of Plaintiffs and Appellants.

Dennis J. Herrera, City Attorney, Wayne K. Snodgrass for Defendant and Respondent.

Keker, Van Nest & Peters, Thomas E. Gorman, Nathaniel H. Brown, Ann Niehaus for Children's Council of San Francisco and Parent Voices San Francisco as Amici Curiae on behalf of Defendant and Respondent.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| HOWARD JARVIS TAXPAYERS ASSOCIATION et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, <br><br> Defendant and Respondent. | A157983 <br><br> (San Francisco County <br> Super. Ct. No. CGC-18-568657) |

Howard Jarvis Taxpayers Association, Building Owners and Managers Association of California, California Business Properties Association, and California Business Roundtable (collectively, Howard Jarvis) appeal from the trial court's judgment rejecting their attempt to invalidate an initiative passed by a simple majority of voters in the City and County of San Francisco (City). Howard Jarvis argues the initiative needed a two-thirds majority to pass. We adopt the reasoning of *City and County of San Francisco v. All Persons Interested in the Matter of Proposition C* (2020) 51 Cal.App.5th 703 (*All Persons*) and reject Howard Jarvis's contention that Proposition 13, Proposition 218 and the San Francisco City Charter compel a supermajority vote for passage. In addition, we reject the contention that the participation of an elected official in the initiative process requires us to distinguish *All Persons*. We affirm the judgment.

BACKGROUND

After garnering sufficient voter signatures to qualify, a proposed initiative entitled "Universal Childcare for San Francisco Families Initiative" was placed on the City's June 2018 ballot as Proposition C. The initiative sought to impose an additional tax on certain commercial rents to fund early childcare and education. Approximately 51 percent of votes cast were in favor of Proposition C.

In August 2018, Howard Jarvis filed the underlying action to invalidate Proposition C on the ground that it needed a two-thirds majority vote to pass. The parties filed cross-motions for summary judgment. The trial court granted the City's motion and denied Howard Jarvis's motion, and subsequently entered judgment for the City. This appeal followed.

DISCUSSION[1]

It is undisputed that Proposition C imposes the type of tax that, if submitted to the voters by the City's Board of Supervisors, would need a two-thirds majority vote to pass. The parties dispute whether a two-thirds majority is also required where, as here, such a tax is presented to the voters by a voter initiative. Howard Jarvis contends that a two-thirds majority to approve voter initiatives is required by: (1) Proposition 13, which added article XIII A to the California Constitution in 1978;[2] (2) Proposition 218,

---

[1] Howard Jarvis requests we take judicial notice of multiple records, but fails to state, as required, "[w]hether the matter to be noticed was presented to the trial court." (Cal. Rules of Court, rule 8.252(a)(2)(B).) However, the City does not oppose the request and the records are judicially noticeable, so we grant the request for judicial notice.

[2] All further article references are to the California Constitution unless otherwise specified.

2

which added article XIII C in 1996; and (3) the San Francisco Charter.[3]  The same arguments were recently rejected by our colleagues in Division Four in *All Persons, supra,* 51 Cal.App.5th 703, about a different Proposition C in a different City election.  *All Persons* has since been "fully agree[d] with and endorse[d]" by *City of Fresno v. Fresno Building Healthy Communities* (2020) 58 Cal.App.5th 884.  We will begin with a discussion of *All Persons,* and then consider Howard Jarvis's arguments that *All Persons* was wrongly decided and distinguishable.[4]

---

[3] An amicus brief in support of Howard Jarvis was filed by the Council on State Taxation, and one in support of the City was filed by Children's Council of San Francisco and Parent Voices San Francisco.

[4] Because *All Persons* issued during the briefing in this case, we asked the parties to submit supplemental briefs discussing its application.  We note that three of the four appellants we refer to collectively as Howard Jarvis were the appellants in *All Persons* (albeit represented by different counsel), and amicus curie Council on State Taxation also submitted an amicus brief in *All Persons* (represented by the same counsel).  *All Persons* issued approximately two months before Howard Jarvis's reply brief and Council on State Taxation's amicus brief were filed, yet neither of these briefs acknowledge this directly applicable contrary authority.  At oral argument counsel for Howard Jarvis, who signed the reply brief, admitted she was aware of *All Persons* at that time, apologized for failing to address it in the reply brief, and said she chose not to discuss it because this case was "different" and "we wanted to focus on the difference."  Substantial portions of the reply brief are devoted to arguments directly addressed in *All Persons* without focusing on the "difference" between the cases.  We admonish counsel to candidly acknowledge such authority in the future.  (See Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2020) ¶ 9:58 ["Your failure to confront unfavorable relevant holdings will be regarded as an attempt to deceive and mislead the court."]; Rules Prof. Conduct, rule 3.3(a)(2) ["A lawyer shall not: [¶] . . . [¶] (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel," fns. omitted].)

I.    All Persons

In *All Persons,* as here, a simple majority of City voters voted in favor of a voter initiative that would impose a special tax.  (*All Persons, supra,* 51 Cal.App.5th at p. 708.)  As here, the City contended a simple majority was sufficient for passage; challengers argued a two-thirds majority was required. (*Ibid.*)

A.    *Voter Initiatives*

*All Persons* began with background on the initiative power.  (*All Persons, supra,* 51 Cal.App.5th at p. 709.)  "Article II describes the initiative as 'the power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them' (art. II, § 8), and states that this power 'may be exercised by the electors of each city or county under procedures that the Legislature shall provide' (art. II, § 11).  '[A]lthough the procedures for exercise of the right of initiative are spelled out in the initiative law, the right itself is guaranteed by the Constitution.' "  (*Ibid.*)  "A defining characteristic of the initiative is the people's power to adopt laws by majority vote. . . . [¶] Currently, article II, section 10, subdivision (a) provides that an 'initiative statute . . . approved by a majority of votes cast thereon takes effect on the fifth day after the Secretary of State files the statement of the vote for the election at which the measure is voted on.'  Parallel legislation for local initiatives is found in the Elections Code . . . ."  (*Id.* at pp. 709–710.)

*All Persons* noted, "The initiative power is ' "one of the most precious rights of our democratic process" [citation].  "[It] has long been our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right be not improperly annulled." ' [Citation.]  Pursuant to our duty to ' " 'jealously guard' " and liberally construe' this right, we must

4

'resolve doubts in favor of the exercise of the right whenever possible.' " (*All Persons, supra,* 51 Cal.App.5th at p. 710.)

B.     *Proposition 13*

*All Persons* considered whether article XIII A, section 4 (section 4), added by Proposition 13, required the special tax initiative be approved by a two-thirds vote. (*All Persons, supra,* 51 Cal.App.5th at p. 714.) It began with the plain language of the provision at issue: "The text of article XIII A, section 4 states that 'Cities, Counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes,' except for taxes relating to the value, possession, or sale of real property. This language is 'ambiguous in various respects,' " including "the phrase 'Cities, Counties, and special districts,' " which could either refer only to governmental entities or could also include the jurisdiction's electorate. (*Ibid.*) "Facing ambiguous language, we turn to context to interpret section 4, starting with other provisions of the California Constitution. [Citation.] Neither section 4 nor any other provision in article XIII A mentions the initiative power, and this silence drives our analysis. When Proposition 13 was approved by California voters in 1978, the initiative power had long been ensconced in our Constitution. [Citation.] 'Initiatives, whether constitutional or statutory, require only a simple majority for passage.' [Citation.] . . . If the voters who approved Proposition 13 (by a majority vote) intended to constrain the constitutionally protected power of future voters to approve initiatives by majority vote, would they not have manifested that intent by some express reference to the initiative power?" (*Id.* at p. 715.)

*All Persons* proceeded to discuss a Supreme Court case that considered whether another provision of Proposition 13 precluded state tax increases from being enacted by voter initiative or, alternatively, required such

5

initiatives be passed by a two-thirds vote, *Kennedy Wholesale, Inc. v. State Bd. of Equalization* (1991) 53 Cal.3d 245 (*Kennedy Wholesale*).[5] (*All Persons, supra,* 51 Cal.App.5th at p. 715.) *All Persons* noted that *Kennedy Wholesale* "found the provision 'ambiguous when read in the context of the whole Constitution,' . . . [and] resolved this contextual ambiguity on the basis of three factors that apply in our case." (*All Persons,* at p. 715.) "First is the general principle that ' "the law shuns repeals by implication," ' " leading *Kennedy Wholesale* to decline a construction of Proposition 13 that would "have impliedly repealed the initiative power reserved to the people in article IV, section 1 . . . . So, here, we will decline to construe section 4 in a manner that repeals by implication the initiative power to pass local laws by majority vote. Nowhere does Proposition 13 mention, let alone purport to repeal, the constitutionally-backed requirement in the Elections Code that a local initiative measure take effect when it garners a majority of votes cast." (*All Persons*, at pp. 715–716.) Second, *Kennedy Wholesale* applied the principle that, because the initiative power is " ' " ' "one of the most precious rights of our democratic process," ' " ' . . . 'we must "*resolve any reasonable doubts in favor of the exercise of this precious right*" ' . . . . [Citation.] Applying that principle here, we will reject a construction of article XIII A, section 4 that hobbles the exercise of the initiative power by lashing it to a supermajority vote requirement." (*All Persons,* at p. 716.) Third, *Kennedy Wholesale* considered Proposition 13's official ballot pamphlet and "found no evidence there to 'support[] the inference that the voters intended to limit their own

---

[5] The provision at issue in *Kennedy Wholesale* provided that " 'any changes in State taxes enacted for the purpose of increasing revenues . . . must be imposed by an Act passed by not less than two-thirds of all members elected to each of the two houses of the Legislature . . . .' " (*Kennedy Wholesale, supra,* 53 Cal.3d at p. 248 [quoting art. XIII A, § 3].)

6

power to raise taxes in the future by statutory initiative.' [Citation.] 'To the contrary,' Proposition 13 was directed against ' "spendthrift politicians" ' and in favor of restoring ' "government of, for and by the people." ' [Citation.] This populist theme, the Court found, was inconsistent with the claim that voters intended Proposition 13 to limit their own power to raise taxes by initiative." (*All Persons,* at p. 716.) *All Persons* reasoned that "[n]one of the evidence *Kennedy Wholesale* cites is specific to section 3, as distinct from section 4, of article XIII A;" moreover, *All Persons* found "multiple references . . . that characterize the measure as restricting the ability of 'local governments to impose' taxes, with no suggestion the initiative similarly constrains local electorates." (*Id.* at p. 717.)[6]

*All Persons* also relied on two earlier Supreme Court cases interpreting section 4: "Decrying the 'fundamentally undemocratic nature of the requirement for an extraordinary majority,' these cases insist that 'the language of section 4 must be strictly construed and ambiguities resolved in favor of permitting voters of cities, counties and "special districts" to enact "special taxes" by a majority rather than a two-thirds vote.' " (*All Persons, supra,* 51 Cal.App.5th at p. 718 [discussing *City and County of San Francisco v. Farrell* (1982) 32 Cal.3d 47 (*Farrell*) & *Los Angeles County Transportation Commission v. Richmond* (1982) 31 Cal.3d 197 (*Richmond*)].)

---

[6] *All Persons* rejected the challengers' reliance on "dictum" in *Kennedy Wholesale* that "section 4's text was strong evidence that 'the voters knew how to impose a supermajority voting requirement upon themselves when that is what they wanted to do,' " reasoning that this "simply acknowledged section 4's two-thirds vote requirement that applies when local government entities—'Cities, Counties, or special districts'—seek to impose special taxes. The Court did not say or suggest that the same requirement applies to local initiatives." (*All Persons, supra,* 51 Cal.App.5th at p. 718.)

7

*All Persons* concluded, "when read in harmony with article II's reservation of the initiative power and in light of the evidence of voter intent discussed above, article XIII A, section 4 is no longer ambiguous. . . . [¶] Section 4 requires governmental entities to gain the approval of a supermajority of voters before imposing a special tax.  It does not repeal or otherwise abridge by implication the people's power to raise taxes by initiative, and to do so by majority vote.  Any such partial repeal by implication is not favored by the law, which imposes a duty on courts to jealously guard, liberally construe and resolve all doubts in favor of the exercise of the initiative power." (*All Persons, supra,* 51 Cal.App.5th at p. 721.)

C.      *Proposition 218*

*All Persons* next considered whether Proposition 218 imposed a two-thirds vote requirement.  (*All Persons, supra,* 51 Cal.App.5th at p. 721.) Again, *All Persons* began with the relevant provision's plain language— "Article XIII C, section 2(d) . . . provides, 'No local government may impose, extend or increase any special tax unless and until that tax is submitted to the electorate and approved by a two-thirds vote' "—and considered the challengers' contention that the phrase "local government" included the electorate exercising its initiative power.  (*Id.* at p. 722.)

*All Persons* turned to *California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 940 (*California Cannabis*), which interpreted the phrase "local government" in a different provision of Proposition 218.  (*All Persons, supra,* 51 Cal.App.5th at p. 722.)[7]  Not only did the phrase "local

---

[7] Article XIII C, section 2(b), provides, in relevant part, "No local government may impose, extend, or increase any general tax unless and until that tax is submitted to the electorate and approved by a majority vote. . . .  The election

8

government" appear in both article XIII C, sections 2(b) and 2(d); but Proposition 218 provided a single definition of the term. (*All Persons,* at p. 722; see art. XIII C, § 1(b) [" 'Local government' means any county, city, city and county, including a charter city or county, any special district, or any other local or regional governmental entity."].)

*All Persons* noted that *California Cannabis* found that " 'nothing in the text of article XIII C, or its context, supports the conclusion that the term "local government" was meant to encompass the electorate.' [Citation.] Even if this term were ambiguous, the Court concluded, extrinsic evidence established that the voters who adopted Proposition 218 did not intend article XIII C, section 2 to burden the initiative power. [Citation.] In terms that apply equally to the issue before us, the Court held that 'article XIII C does not limit the voters' "power to raise taxes" ' because a 'contrary conclusion would require an unreasonably broad construction of the term "local government" at the expense of the people's constitutional right to direct democracy, undermining our longstanding and consistent view that courts should protect and liberally construe it.' [Citation.] Summing up its analytical approach, the Court explained: '[w]ithout a direct reference in the text of a provision—or a similarly clear, unambiguous indication that it was within the ambit of a provision's purpose to constrain the people's initiative power—we will not construe a provision as imposing such a limitation.' " (*All Persons, supra,* 51 Cal.App.5th at p. 723.)

---

required by this subdivision shall be consolidated with a regularly scheduled general election for members of the governing body of the local government . . . ." *California Cannabis* considered whether this provision required that a voter initiative seeking to impose a general tax be submitted at a general, rather than a special, election. (*California Cannabis, supra,* 3 Cal.5th at pp. 930–931.)

*All Persons* found "no basis" to interpret "local government" differently in the case before it: "[Article XIII C, s]ections 2(b) and 2(d) are found in the same article and section of the state Constitution. They were both added by Proposition 218. They employ parallel language and incorporate the exact same definition of local government set forth in article XIII C, section 1. The *California Cannabis* Court held that the definition of 'local government' in article XIII C, section 2 of the Constitution is not 'broad enough to include the electorate.' [Citation.] That holding applies here." (*All Persons, supra,* 51 Cal.App.5th at p. 723.)

D.    *City Charter*

Finally, *All Persons* considered the challengers' contention that a two-thirds majority was required by the City's Charter (the Charter): "The Charter recognizes voters' initiative power (S.F. Charter, § 14.100), as long as an initiative measure is 'within the powers conferred upon the Board of Supervisors to enact' (S.F. Charter, Art. XVII). This means 'the electorate has no greater power to legislate than the board itself possesses.' " (*All Persons, supra,* 51 Cal.App.5th at p. 724.) The challengers "argue from this principle that the electorate, like the Board of Supervisors, cannot impose special taxes without the concurrence of two-thirds of the voters. But the Charter imposes a substantive limit on the initiative power; it does not import into the initiative process any procedural limitation on Board action, such as the supermajority vote requirements of article XIII A, section 4 or article XIII C, section 2(d). [¶] . . . [T]he general rule that the voters' lawmaking power is coextensive with the Legislature's power does not extend to 'legislative procedures, such as voting requirements' which 'cannot reasonably be assumed to apply to the electorate without evidence that such was intended.' [Citation.] . . . Because the [challengers] point to no evidence

10

that the Charter intends procedural limitations on the Board of Supervisors' legislative powers to apply to local initiatives, their challenge under the Charter fails." (*Id.* at pp. 724–725.) Having rejected all of the contrary arguments, *All Persons* held the initiative was validly passed by a simple majority. (*Id.* at p. 725.)

II.     All Persons *Governs This Case*

Howard Jarvis attempts to cast doubt on or, in the alternative, distinguish *All Persons.* The arguments are unavailing.

A.      All Persons *Is Well-Reasoned and Sound*

Howard Jarvis contends *All Persons* erred in relying on earlier cases holding that Proposition 13 should be strictly construed. (See *All Persons, supra,* 51 Cal.App.5th at p. 718 [citing *Farrell, supra,* 32 Cal.3d 47 & *Richmond, supra,* 31 Cal.3d 197].) Howard Jarvis points to a Court of Appeal case stating the passage of Proposition 218, which contains a liberal construction clause, "effectively reversed these cases." (*Capistrano Taxpayers Assn., Inc. v. City of San Juan Capistrano* (2015) 235 Cal.App.4th 1493, 1513, fn. 19.) However, *California Cannabis,* in construing Proposition 218, directed a strict construction of provisions that would limit the initiative power: "we resolve doubts about the scope of the initiative power in its favor whenever possible [citation], and we narrowly construe provisions that would burden or limit the exercise of that power [citation]." (*California Cannabis, supra,* 3 Cal.5th at p. 936.) In any event, *All Persons* noted the strict construction principle only after finding numerous other considerations weighed against construing Proposition 13 to apply to voter initiatives. (*All Persons,* at pp. 715–717.)

Howard Jarvis also criticizes *All Persons'* construction of Proposition 13's silence with respect to the initiative power as indicative of voter intent

11

not to restrict such power. (See *All Persons, supra,* 51 Cal.App.5th at p. 715.) Howard Jarvis argues we should instead construe the silence as indicating the opposite intent, because of the multiple statewide initiatives imposing a supermajority voting requirement and prior cases assuming—without directly considering the issue—that the requirement applied to voter initiatives. To do so would ignore *California Cannabis's* direction that "[w]ithout a direct reference in the text of a provision—or a similarly clear, unambiguous indication that it was within the ambit of a provision's purpose to constrain the people's initiative power—we will not construe a provision as imposing such a limitation." (*California Cannabis, supra,* 3 Cal.5th at p. 931.)

Howard Jarvis contends *All Persons* misreads *Kennedy Wholesale,* arguing *Kennedy Wholesale* "rejected a literal reading of [article XIII A,] section 3 because it was contrary to voter intent." *Kennedy Wholesale* in fact found section 3 "ambiguous when read in the context of the whole Constitution;" only because of that ambiguity was it "appropriate to consider indicia of the voters' intent other than the language of the provision itself." (*Kennedy Wholesale, supra,* 53 Cal.3d at pp. 249–250.) *All Persons* appropriately conducted the same analysis in construing Proposition 13.

Howard Jarvis also contends *All Persons* misreads *California Cannabis,* arguing the provision construed in *California Cannabis* "dealt only with the timing of a general tax election" and the Supreme Court "limited its ruling to the election timing issue." Howard Jarvis fails to refute *All Persons'* well-reasoned explanation as to why *California Cannabis's* construction of "local government" for purposes of article XIII C, section 2(b) applies equally to section 2(d). (*All Persons, supra,* 51 Cal.App.5th at p. 723 [the two provisions "are found in in the same article and section of the state

12

Constitution," "were both added by Proposition 218," "employ parallel language and incorporate the exact same definition of local government set forth in article XIII C, section 1"].)

Howard Jarvis argues *All Persons* did not resolve an argument that the two-thirds requirement "applies *only* to the voters," such that "defining 'local government' is irrelevant." In fact, *All Persons* considered a related argument, that "in [article XIII C,] section 2(d) voters explicitly imposed a two-thirds vote requirement on themselves. . . . But the . . . argument begs the question, to what kinds of measures does this two-thirds vote requirement apply? To answer this question, we follow controlling precedent, including *California Cannabis*, which construes the precise language that we are called upon to interpret here. Under *California Cannabis* the term 'local government' in article XIII C does not include the voting electorate." (*All Persons, supra,* 51 Cal.App.5th at pp. 723–724.) We further decline Howard Jarvis's invitation to ignore the phrase "local government," which would contravene the principle that "we generally must 'accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose,' and . . . '[a] construction making some words surplusage is to be avoided.'" (*People v. Valencia* (2017) 3 Cal.5th 347, 357.)

Howard Jarvis notes the constitutional provision for majority approval of initiatives applies only to statewide initiatives, and majority approval of local initiatives is provided by statute. (See art. II, § 10, subd. (a) ["An initiative statute or referendum approved by a majority of votes cast thereon takes effect on the fifth day after the Secretary of State files the statement of the vote for the election at which the measure is voted on . . . ."]; *All Persons, supra,* 51 Cal.App.5th at p. 710 [quoting art. II, § 10, subd. (a) and noting "[p]arallel legislation for local initiatives is found in the Elections Code;

13

section 9217 provides that 'if a majority of the voters voting on a proposed ordinance vote in its favor, the ordinance shall become a valid and binding ordinance of the city' "].)  But Howard Jarvis fails to explain why this compels the conclusion that the two-thirds requirement applies to voter initiatives. Notably, the constitutional initiative provisions were also silent about the procedural restriction considered in *California Cannabis*.  (*California Cannabis, supra,* 3 Cal.5th at pp. 934–935 [discussing statutes providing for initiatives to be submitted at special elections].)  The absence of constitutional initiative provisions governing the matter did not prevent the Supreme Court from concluding that applying Proposition 218's procedural restriction to voter initiatives would be "at the expense of the people's constitutional right to direct democracy, undermining our longstanding and consistent view that courts should protect and liberally construe it." (*California Cannabis,* at p. 931.)  The absence of a constitutional provision expressly authorizing majority approval of local voter initiatives is immaterial.

B.     *Neither* Boling *Nor* Rider *Compel a Different Result*

Howard Jarvis argues this case is distinguishable from *All Persons* because of the involvement of an elected official in the voter initiative process.  Howard Jarvis points to the undisputed facts that a member of the City's Board of Supervisors (Board) was the proponent of Proposition C, submitted the written "Notice of Intent to Circulate Petitions" for Proposition C, turned in the signed initiative petition pages, signed ballot arguments in favor of Proposition C, and used his "Supervisor" title and City Hall address for various documents related to Proposition C.  In addition, two ordinances nearly identical to Proposition C were pending before the Board in early 2018, around the time of Proposition C's qualification for the ballot.  The

14

Board member withdrew his signature from one of these proposed ordinances shortly after Proposition C qualified for the ballot.

Howard Jarvis primarily relies on *Boling v. Public Employment Relations Board* (2018) 5 Cal.5th 898 (*Boling*). In *Boling,* the Supreme Court construed a public employee relations statute providing that "[g]overning bodies 'or other representatives as may be properly designated' are required to engage with unions on matters within the scope of representation 'prior to arriving at a determination of policy or course of action.' " (*Id.* at p. 904 [quoting Gov. Code, § 3505].) A mayor, whose responsibilities included bargaining with city unions and complying with the statutory meet-and-confer requirements, "conceived the idea of a citizens' initiative pension reform measure, developed its terms, and negotiated with other interested parties before any citizen proponents stepped forward. He relied on his position of authority and employed his staff throughout the process. He continued using his powers of office to promote the Initiative after the proponents emerged." (*Id.* at pp. 904, 916.)

In considering whether the meet and confer requirement applied, the Supreme Court noted that the statute's "broad formulation encompasses more than formal actions taken by the governing body itself." (*Boling, supra,* 5 Cal.5th at p. 904.)[8] The statute "expressly imposes the duty to meet and confer on '[t]he governing body of a public agency, or such boards, commissions, *administrative officers or other representatives as may be properly designated by law or by such governing body*.' (Italics added.)

---

[8] Although the Supreme Court was reviewing an agency's construction of the statute that should be " 'follow[ed] . . . unless it is clearly erroneous," the Court additionally found the agency's construction was "clearly correct." (*Boling, supra,* 5 Cal.5th at p. 917.)

15

. . . Here, the mayor was the city's chief executive, empowered by the city charter to make policy recommendations with regard to city employees and to negotiate with the city's unions. Under the terms of [the statute], he was required to meet and confer with the unions 'prior to arriving at a determination of policy or course of action' on matters affecting the 'terms and conditions of employment.' " (*Boling, supra,* 5 Cal.5th at pp. 917–918.)

The Supreme Court continued, "[u]nder the facts presented here, [the mayor] pursued pension reform as a matter of policy while acting as the city's chief executive officer. . . . The obligation to meet and confer did not depend on the means he chose to reach his policy objectives or the role of the city council in the process. . . . The relevant question is whether the executive is using the powers and resources of his office to alter the terms and conditions of employment. [¶] Here the answer is plainly 'yes.' . . . He consistently invoked his position as mayor and used city resources and employees to draft, promote, and support the Initiative. The city's assertion that his support was merely that of a private citizen does not withstand objective scrutiny." (*Boling, supra,* 5 Cal.5th at p. 919.) The court noted, "The line between official action and private activities undertaken by public officials may be less clear in other circumstances. However, when a local official with responsibility over labor relations uses the powers and resources of his office to play a major role in the promotion of a ballot initiative affecting terms and conditions of employment, the duty to meet and confer arises. Whether an official played such a major role will generally be a question of fact . . . ." (*Ibid.*)

Howard Jarvis argues that, under *Boling*, we should construe Propositions 13 and 218 as applying to voter initiatives when promoted by

16

elected officials.[9]  Critically, however, *Boling* did not suggest that imposing the meet-and-confer requirement resulted in any restriction on the initiative power.  Instead, the impact was on "a local agency's governing functions" and was "a relatively 'minimal' burden." (*Boling, supra,* 5 Cal.5th at p. 915; see *ibid.* [although the meet-and-confer provision " 'encourages binding agreements resulting from the parties' bargaining, the governing body of the agency . . . retains the ultimate power to refuse an agreement and to make its own decision' "].)  In contrast, we are obliged to "narrowly construe provisions that would burden or limit the exercise of" the initiative power (*California Cannabis, supra,* 3 Cal.5th at p. 936), and the two-thirds requirement "hobbles the exercise of the initiative power by lashing it to a supermajority vote requirement" (*All Persons, supra,* 51 Cal.App.5th at p. 716).  Thus, *Boling's* construction does not apply in this case.

Howard Jarvis characterizes *Boling* as applying a legislative procedure to a voter initiative.  We disagree.  *Boling* did not impose the meet and confer requirement on the initiative process—which remained unchanged by the decision—but rather on the designated representative's pursuit of policy changes, regardless of the means chosen.  Similarly, Howard Jarvis's argument that *Boling* "assumes the electorate is a part of the 'public agency' by insisting on application of the 'meet and confer' requirement" is

---

[9] To the extent Howard Jarvis contends the Board member's involvement in Proposition C rendered it a legislative initiative, we reject the claim.  The Charter sets forth clear criteria for determining the type of initiative: if it was submitted by the mayor or at least four Board members, it is a legislative initiative; if the requisite number of voter signatures on circulated initiative petitions were obtained, it is a voter initiative.  (S.F. Charter, §§ 2.113, 14.101.)  Howard Jarvis provides no authority that we may judicially alter these criteria.

unavailing.  The electorate was not required to meet and confer with the union; only the public agency's designated representative was.

Howard Jarvis also relies on *Rider v. County of San Diego* (1991) 1 Cal.4th 1 (*Rider*), which considered whether an agency was a "special district" for purposes of section 4.  The agency at issue was created by legislative enactment " 'solely for the purpose of avoiding the strictures of Proposition 13.' " (*Rider,* at p. 8.)  Although the agency was a separate entity from the county, the county "retained substantial control over operations and expenditures" and "the Agency's boundaries are coterminous with the County's." (*Id.* at p. 9.)  The Supreme Court construed "special district" to include "any local taxing agency created to raise funds for city or county purposes to replace revenues lost by reason of the restrictions of Proposition 13," reasoning that "[t]o hold otherwise clearly would create a wide loophole in Proposition 13." (*Id.* at pp. 10–11.)  The Supreme Court noted that, while it may be difficult to prove an agency was created for purposes of the "intentional circumvention" of Proposition 13, "courts may infer such intent whenever the plaintiff has proved the new tax agency is *essentially controlled* by one or more cities or counties that otherwise would have had to comply with the supermajority provision of section 4."[10]  (*Ibid.*)

Howard Jarvis offers the following tests for voter initiatives: "Did an elected official sponsor the initiative, or was there collusion between officials

_____

[10] Relevant considerations in this determination include "the presence or absence of (1) substantial municipal control over agency operations, revenues or expenditures, (2) municipal ownership or control over agency property or facilities, (3) coterminous physical boundaries, (4) common or overlapping governing boards, (5) municipal involvement in the creation or formation of the agency, and (6) agency performance of functions customarily or historically performed by municipalities and financed through levies of property taxes." (*Rider, supra,* 1 Cal.4th at p. 12.)

and the citizen sponsor?  Did the official's sponsorship or collusion with the citizen sponsor cause a duty to disappear that would otherwise exist?"  "Is there overlap between the governing body and the citizens' initiative committee?  Is a public official causing municipal involvement in the citizens' initiative committee?"  But Howard Jarvis does not contend that a single official's sponsorship of or involvement in an initiative gives rise to the inference that a city or county intentionally circumvented Propositions 13 and 218, or demonstrates that the official effectively controlled the initiative.  Thus, the test proposed does not incorporate the concerns underlying *Rider*.

More significantly, neither the text nor ballot materials provide the requisite "unambiguous indication" that the enactors of Propositions 13 and 218 intended to constrain the initiative power when an official is involved in the initiative process.  (*California Cannabis, supra,* 3 Cal.5th at pp. 945–946 ["Without an unambiguous indication that a provision's purpose was to constrain the initiative power, we will not construe it to impose such limitations.  Such evidence might include an explicit reference to the initiative power in a provision's text, or sufficiently unambiguous statements regarding such a purpose in ballot materials."].)  Absent such a clear indication, we will not construe the two-thirds requirement to apply to such initiatives.[11]

---

[11] *California Cannabis* acknowledged a "hypothetical city council . . . could conceivably collude with a public employee union to place a levy on the ballot as a means of raising revenue for a goal supported by both," "the council accepts the union's contract proposal—which will be funded by increasing a utility tax," "the union could mobilize city employees to collect signatures on an initiative proposing the tax increase," and "[o]nce enough signatures are collected . . . the city council could simply adopt the ordinance without submitting the tax increase to the voters," thereby "effectively skirt[ing]" Proposition 218's requirement that the tax be submitted to the electorate.

19

## DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.

---

(*California Cannabis, supra,* 3 Cal.5th at p. 947.)  Howard Jarvis does not claim the Board member here colluded with a union or any other group, nor was the tax adopted by the Board without being submitted to the voters. Moreover, the Supreme Court noted such "facts are not presented here, and we decline to take up what would happen should they arise."  (*Ibid.*) Although Howard Jarvis argues the Supreme Court's "negative tone presages that such a tactic would fail," we do not derive any relevant insight from this passage.

_____

SIMONS, Acting P.J.

We concur.

_____

BURNS, J.

_____

SELIGMAN, J.*

(A157983)

_____

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21

Superior Court of San Francisco County, No. CGC-18-568657, Hon. Ethan P. Schulman, Judge.

Jonathan M. Coupal, Timothy A. Bittle, Laura E. Dougherty for Plaintiffs and Appellants.

Eversheds Sutherland, Timothy A. Gustafson, Eric J. Coffill, Alexandra M. Louderback for Council on State Taxation as Amicus Curiae on behalf of Plaintiffs and Appellants.

Dennis J. Herrera, City Attorney, Wayne K. Snodgrass for Defendant and Respondent.

Keker, Van Nest & Peters, Thomas E. Gorman, Nathaniel H. Brown, Ann Niehaus for Children's Council of San Francisco and Parent Voices San Francisco as Amici Curiae on behalf of Defendant and Respondent.